**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>SIGNIA, LTD.,<br><br>Debtor. | Bankruptcy Case No. 24-13438 TBM<br>Chapter 11 |
| SIGNIA, LTD.,<br><br>Plaintiff,<br><br>v.<br><br>MALE EXCEL MEDICAL, P.A. and<br>MALE EXCEL, INC.,<br><br>Defendants. | Adv. Pro. No. 24-1214 TBM |

**ORDER GRANTING MOTION TO DISMISS**

## I.    Introduction.

The dispute before the Court is the latest chapter in the long saga of litigation between the Debtor, Signia, Ltd. (the "Debtor"), and it principal creditors, Male Excel Medical, P.A. and Male Excel, Inc. (together, "Male Excel").  About five years ago, Male Excel sued the Debtor (which had been providing sales and marketing services to Male Excel) in Nevada State Court.  In 2023, the Nevada State Court entered a Judgment in favor of Male Excel and against the Debtor in the amount of $2,051,745, plus attorneys' fees, costs, and interest (as defined below, the "Judgment").  Male Excel asserts that the amount of debt owed by the Debtor under the Judgment has ballooned to about $5,376,730.  The Debtor appealed.  Meanwhile, Male Excel has been trying to collect on the Judgment.

The Debtor filed two petitions for bankruptcy protection under Chapter 11 of the Bankruptcy Code[1] to stop collection by Male Excel and attempt to reorganize.  A few days after dismissal of its first bankruptcy case, the Debtor filed the current bankruptcy case: *In re Signia, Ltd.*, 24-13438 TBM (Bankr. D. Colo.) (the "Second Bankruptcy Case").  During the pendency of the Second Bankruptcy Case, on September 16, 2024,

---

[1]    All references to the "Bankruptcy Code" are to the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to sections of the Bankruptcy Code.

Male Excel commenced a lawsuit in the United States District Court for the District of Colorado captioned: *Male Excel Medical, P.A. et al. v. Alfred Trexler et al.,* Case No. 1:24-cv-02539 KAS (D. Colo.) (the "Federal Court Action"). In the Federal Court Action, Male Excel asserted alter ego claims against the corporate parents of the Debtor as well as certain other related entities and individuals — but not the Debtor — to try to collect on the Judgment. The Federal Court Action is pending.

Meanwhile, the Debtor quickly retaliated in this Court. The attack was two-pronged. First, on September 17, 2024, the Debtor filed a "Settlement Agreement" in the Second Bankruptcy Case purporting to settle the same type of alter ego claims asserted by Male Excel in the Federal Court Action with its own insider corporate parents and related entities and individuals. Then, the next day, the Debtor filed this Adversary Proceeding. In this Adversary Proceeding, the Debtor claims that the alter ego claims advanced by Male Excel in the Federal Court Action are "property of the estate" under Sections 541(a)(1) and/or 544(a) within the exclusive control of the Debtor. The Debtor then asserts that Male Excel is violating the Section 362(a) automatic stay by prosecuting the Federal Court Action and should be enjoined from doing so as well as punished with damages.

Instead of answering the operative complaint in this Adversary Proceeding, Male Excel submitted a "Motion to Dismiss Amended Complaint for (A) Declaratory and Injunctive Relief and (B) Damages" (Docket No. 14, the "Motion to Dismiss"). Male Excel argues that this Adversary Proceeding should be dismissed for failure of the Debtor to state a claim upon which can be granted pursuant to Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012. The Debtor opposed the Motion to Dismiss. (Document No. 16, the "Response.") For the reasons set forth below, the Court grants the Motion to Dismiss and dismisses this Adversary Proceeding.

## II.   <u>Jurisdiction and Venue</u>.

The Court has jurisdiction over this Adversary Proceeding and the Motion to Dismiss pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b). This contest over alleged violations of the Section 362(a) automatic stay is a core proceeding per 28 U.S.C. §§ 157(b)(2)(A) (matters concerning administration of the estate), (b)(2)(G) (motions to terminate, annul, or modify the automatic stay), and (b)(2)(O) (other proceedings affecting the adjustment of the debtor-creditor relationship). Venue is proper in this Court under 28 U.S.C. §§ 1408 and 1409.

### III.     Procedural Background.[2]

#### A.     The Nevada State Action and Judgment.

About five years ago, Male Excel sued the Debtor (which had been providing sales and marketing services to Male Excel) for breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and intentional misrepresentation in the case captioned: *Male Excel Medical, P.A. et al. v. Signia Marketing, Ltd.,* Case No. A-20-816167-B (Eighth Judicial District Court (Department No. 13), Clark County, Nevada) (the "Nevada State Action").[3]  After several years of pre-trial litigation, the Nevada State Court conducted a trial from May 16, 2023 through June 14, 2023.[4]  On August 16, 2023, the Nevada State Court entered "Findings of Fact, Conclusions of Law, and Judgment" (the "Judgment") in the Nevada State Action.[5]  The Judgment is quite comprehensive and spans more than 72 pages of text.  In the Judgment, the Nevada State Court entered judgment in favor of Male Excel and against the Debtor for breach of contract and unjust enrichment in the amount of $2,051,745.00, plus unspecified attorneys' fees, costs, and interest.[6]  On September 21, 2023, the Debtor appealed the adverse Judgment to the Nevada Supreme Court without posting a supersedeas bond (the "Nevada Appeal").[7]

#### B.     The First Bankruptcy Case.

As a mechanism to stop execution on the Judgment, a few days later, on September 27, 2023, Signia filed for bankruptcy protection under Chapter 11 Subchapter V of the Bankruptcy Code in the First Bankruptcy Case:  *In re Signia, Ltd.*, Case No. 23-14384 TBM (Bankr. D. Colo.).[8]  The Debtor is a Colorado limited liability company.  In its Schedules filed in the First Bankruptcy Case, the Debtor did not identify any alter ego claims owned by the Debtor against its direct parents, Sulit Group Ltd. and

---

[2]     The Court takes judicial notice of the Dockets in the First Bankruptcy Case, the Second Bankruptcy Case, the Federal Court Action, and this Adversary Proceeding (all as defined below).  *See St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) (court may *sua sponte* take judicial notice of its own docket and "in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to the matters at issue.").

[3]     Second Bankruptcy Case Docket No. 44 at 1.  The Court uses the convention "First Bankruptcy Case Docket No. ___" to refer to documents filed in the Court's CM/ECF docket system in the bankruptcy case: *In re Signia, Ltd.*, Case No. 23-14384 TBM (Bankr. D. Colo.) (the "First Bankruptcy Case").  The Court uses the convention "Second Bankruptcy Case Docket No. ___" to refer to documents filed in the Court's CM/ECF docket system in the bankruptcy case: *In re Signia, Ltd.*, Case No. 24-13438 TBM (Bankr. D. Colo.) (the "Second Bankruptcy Case").  The Court uses the convention "Docket No. ___" to refer to documents filed in the Colorado Federal Court's CM/ECF docket system in the Federal Court Action: *Male Excel Medical, P.A., et al. v. Trexler et al.*, Case No. 1:24-cv-02539-KAS (D. Colo.) (the "Federal Court Action").  The Court uses the convention "Docket No. ___" to refer to documents filed in the Court's CM/ECF docket system in this Adversary Proceeding: *Signia Ltd. v. Male Excel Medical, P.A. and Male Excel, Inc. (In re Signia, Ltd.)*, Adv. Pro. No. 24-1214 TBM (Bankr. D. Colo.) (the "Adversary Proceeding").

[4]     Second Bankruptcy Case Claim No. 4 at 11.

[5]     *Id.* at 11-84; Second Bankruptcy Case Docket No. 44 at 1.

[6]     *Id.*

[7]     Second Bankruptcy Case Docket No. 44 at 1.

[8]     First Bankruptcy Case Docket No. 1.

Vero Investment Co., or any other affiliated persons or entities (including Jeffrey Fell, Alfred Trexler, JAFT Ventures, LLC, or National Research and Polling Group, Ltd.).[9]

The First Bankruptcy Case was hotly contested.  As relevant to the current dispute, the Debtor filed a "Motion for Relief from Stay"[10] requesting relief from stay to prosecute the Nevada Appeal in the Nevada Supreme Court.  However, the Debtor did not ask for relief from stay to allow the Nevada State Court to finalize the amount of attorneys' fees and costs under the Judgment nor to permit Male Excel to submit a cross-appeal.  Accordingly, Male Excel filed a "Counter-Motion for Relief from Stay"[11] requesting relief from stay to finalize the amount of attorneys' fees and costs in the Nevada State Court and to permit both the Debtor and Male Excel to pursue appellate remedies.  After further contests, the Court granted both the foregoing "Motion for Relief from Stay" and the "Counter-Motion for Relief from Stay,"[12] thereby allowing the parties to (1) proceed to finalize attorneys' fees and costs (as well as ancillary issues pertaining to the Judgment) in the Nevada State Court; and (2) prosecute any appeals or cross-appeals in the Nevada Supreme Court.  Subsequently, on June 4, 2024, the Nevada State Court entered an "Order Granting Motion for Attorney Fees and Costs" granting Male Excel attorneys' fees in the amount of $788,844.14 and costs in the amount of $319,139.12.[13]  (When referring to the "Judgment" hereinafter, the Court includes the additional amounts awarded by the Nevada State Court for attorneys' fees and costs.)  The Debtor promptly appealed again to the Nevada Supreme Court.[14]  (When referring to the "Nevada Appeal" hereinafter, the Court includes the second appeal by the Debtor.)

The Debtor did not comply with the timing requirements for filing a Subchapter V plan.  Thereafter, the Court entered an "Opinion and Order Denying Motion to Extend Plan Filing Date."[15]  Subsequently, the Debtor filed a "Motion to Dismiss Case Pursuant to 11 U.S.C. § 1112(b)(1),"[16] which Male Excel opposed.[17]  More litigation ensued.  Months later, Male Excel withdrew its opposition to dismissal.[18]  Accordingly, on June 12, 2024, the Court entered an Order dismissing the First Bankruptcy Case.[19]  During the entire pendency of the First Bankruptcy Case, the Debtor did not identify any alter ego claims as assets of the Debtor's bankruptcy estate.

## C.     The Second Bankruptcy Case.

A few weeks after the dismissal of the First Bankruptcy Case, on June 20, 2024, the Debtor decided to try again and filed for bankruptcy protection under Chapter 11 Subchapter V of the Bankruptcy Code in the Second Bankruptcy Case:  *In re Signia,*

---

[9]   *Id.*
[10]   First Bankruptcy Case Docket No. 43.
[11]   First Bankruptcy Case Docket No. 75.
[12]   First Bankruptcy Case Docket Nos. 83, 84, 128, and 129.
[13]   Second Bankruptcy Case Claim No. 4 at 89-94.
[14]   *Id.* at 98-99.
[15]   First Bankruptcy Case Docket No. 168.
[16]   First Bankruptcy Case Docket No. 208.
[17]   First Bankruptcy Case Docket No. 220.
[18]   First Bankruptcy Case Docket No. 349.
[19]   First Bankruptcy Case Docket No. 354.

*Ltd.*, Case No. 24-13438 TBM (Bankr. D. Colo.).[20]  In its Schedules filed in the Second Bankruptcy Case, the Debtor did not identify any alter ego claims owned by the Debtor against its direct parents, Sulit Group Ltd. or Vero Investment Co., or any other affiliated persons or entities (including Jeffrey Fell, Alfred Trexler, Vero Investment Co., JAFT Ventures, LLC, or National Research and Polling Group, Ltd.).[21]  Promptly after the commencement of the Second Bankruptcy Case, Male Excel filed Proof of Claim No. 4 asserting a general unsecured claim against the Debtor based on the Judgment in the amount of $4,469,565.48 to $5,376,730.63.  Male Excel is the largest general unsecured creditor of the Debtor.

Like the First Bankruptcy Case, the Second Bankruptcy Case also has been hotly contested.  However, the Debtor and Male Excel stipulated to relief from stay to allow the parties to continue to prosecute and defend the Nevada Appeal.[22]  On July 22, 2024, the Court entered an Order granting relief from stay for the parties to continue the prosecution and defense of the Nevada Appeal (including cross-appeals).[23]  However, as of the date of this Order, the Nevada Supreme Court has not ruled on the merits of the Nevada Appeal.

More fights ensued.  The Debtor withdrew its Subchapter V election and is proceeding in a standard Chapter 11 reorganization.[24]  The Debtor has submitted a series of Chapter 11 Disclosure Statements and Plans;[25] however, to date, the Court has not confirmed any of the Debtor's proposed Plans.  Further, the Debtor submitted an Amended Schedule A/B identifying the following as property of the bankruptcy estate:[26]

> Pre-petition claims and causes of action against Sulit Group, Ltd., National Research and Polling Group, Ltd., JAFT Ventures, Ltd., Vero Investment Company, DialCloud, LLC, Jeffrey Fell and Alfred Trexler, whether direct or derivative, (1) arising under the Colorado Uniform Fraudulent Transfer Act or the fraudulent transfer statute or common law of any other state; (2) sounding in fraud of any kind, whether brought under statute or common law of any jurisdiction; (3) breach of fiduciary duty causes of action and remedies of any kind, whether brought under statute or common law of any jurisdiction; (4) alter ego causes of action and remedies of any kind, whether brought under statute or common law of any jurisdiction, including, without limitation, veil piercing, reverse veil piercing, horizontal veil piercing, single enterprise theory, common enterprise theory, substantive consolidation; and (5) any legal claim, theory or doctrine of a

---

[20]     Second Bankruptcy Case Docket No. 1.
[21]     *Id.*
[22]     Second Bankruptcy Case Docket No. 44.
[23]     Second Bankruptcy Case Docket No. 79.
[24]     Second Bankruptcy Case Docket No. 102.
[25]     Second Bankruptcy Case Docket No. 130, 131, 183, 184, 187.
[26]     Docket No. 180.

similar nature.  This disclosure of pre-petition claims does not include claims that arise as a result of the bankruptcy filing, such as causes of action arising under Chapter 5 of the Bankruptcy Code.  Such claims are property of the Debtor's bankruptcy estate but not included herein because they did not exist before the bankruptcy filing.  Amount requested: $0.00.

**D.**     **The Colorado Federal Court Action.**

Meanwhile, apparently frustrated with its inability to collect on the Judgment during the First Bankruptcy Case and the Second Bankruptcy Case, Male Excel hit on another litigation gambit (which had been percolating in the background for many months).  On September 16, 2024, Male Excel filed a lawsuit in the United States District Court for the District of Colorado (the "Colorado Federal Court") captioned: *Male Excel Medical, P.A. et al. v. Alfred Trexler et al.,* Case No. 1:24-cv-02539-KAS (D. Colo.) (the "Federal Court Action").  The Defendants in the Federal Court Action are: Alfred Trexler ("Mr. Trexler"); Jeffrey Fell ("Mr. Fell"); Sulit Group, Ltd ("Sulit Group"); Vero Investment Co. ("Vero Investment"); JAFT Ventures, LLC ("JAFT Ventures"); and National Research and Polling Group, Ltd. ("NRPG") (together, the "Federal Court Defendants").  Notably, the Debtor is not a Defendant in the Federal Court Action.

According to the Complaint in the Federal Court Action (the "Federal Court Complaint"): "This is a veil-piercing action to enforce a judgment entered in favor of Male Excel and against non-party judgment debtor Signia Marketing, Ltd. [in the Nevada State Action]."[27]  Male Excel asserted that:

> 3.     . . . Signia was never a properly operated corporate entity with a personage separate and distinct from that of the Defendants.  Rather, Signia at all times relevant hereto was a sham entity dominated and controlled by the following alter egos:
>
> a.     Two individual insiders: Defendants Alfred Trexler and Jeffrey Fell, and
>
> b.     A web of insider entities: Defendants Sulit Group, Ltd., Vero Investment Co., JAFT Venture, LLC and National Research and Polling Group, Ltd. (collectively, the "Entity Defendants").
>
> 4.     Basic corporate formalities in the management and operation of Signia were completely disregarded, and

---

[27]     Docket No. 14 at 22.  The Court does not accept the truth of the factual allegations in the Federal Court Complaint.  However, the nature of the allegations and claims is important in adjudicating the Motion to Dismiss.

instead Defendants improperly treated Signia and the
Entity Defendants as a single economic unit.

5.      Male Excel is compelled to seek an order from this
Court piercing the corporate veil to hold all
Defendants, and each of them, jointly and severally
liable for the obligations of Signia, including the
Nevada Judgment . . . .[28]

In the Federal Court Complaint, Male Excel alleged that Sulit Group owns 80% of
the Membership Interests in the Debtor and Vero Investment owns the remaining 20%
of the Membership Interests in the Debtor.[29]  Per the Federal Court Complaint, Mr. Fell
owns 50% of the equity in the Sulit Group and Mr. Trexler owns the remaining 50% of
the equity in the Sulit Group.[30]  Furthermore, Male Excel alleged that Mr. Fell wholly-
owns Vero Investment.  According to the Federal Court Complaint, NRPG is owned
70% by the Sulit Group and 30% by Vero Investment.[31]  Finally, Male Excel asserts that
Sulit Group owns 98% of the equity in JAFT Ventures while Vero Investment owns the
remaining 2% of the equity in JAFT Ventures.[32]

So, based upon the factual allegations in the Federal Action Complaint (and as
expressly stipulated between the Debtor and Male Excel),[33] the corporate structure of
Signia and the Federal Court Defendants is as follows graphically:

---

[28]      Docket No. 14 at 23.
[29]      Docket No. 14 at 28.
[30]      Docket No. 14 at 29.
[31]      *Id.*
[32]      Docket No. 14 at 30.
[33]      *See also* Second Bankruptcy Case Docket No. 253 at 7-9 (Debtor and Male Excel stipulated that:
"Debtor is organized as a Colorado limited liability company"; "Signia Marketing, Ltd. and Signia, Ltd. are
the same entity"; "Debtor is owned 80% by Sulit and 20% by Vero"; Sulit Group is a Colorado corporation
"owned 50% by Trexler and 50% by Fell"; NRPG is a Colorado limited liability company "owned 70% by
Sulit and 20% by Vero"; JAFT Ventures is a Colorado limited liability company "owned 98% by Sulit and
2% by Vero."; Vero Investment is a Colorado corporation "owned 100% by Fell").  The foregoing matches
with the allegations in the Federal Court Complaint except for what appears to be a typographical
discrepancy concerning Vero Investment's ownership of NRPG.  The discrepancy is not material.



In the Federal Court Complaint, Male Excel proposes to "pierce" all the various corporate veils so that all of the Federal Court Defendants become liable for payment of the Judgment.  In support of such position, Male Excel contends, among other things, that: (1) "The Same Individuals and Firms Perform Work for Signia and the Defendants"; (2) "Signia and the Entity Defendants All Conduct Business Through a Sulit Email Address"; (3) "Signia and the Entity Defendants Purportedly Operate Out of the Same Location"; (4) "Signia Aided Insider JAFT in Financing the Purchase of Real Property and Received No Consideration"; (5) Signia Has a "Nonstandard Landlord-Tenant Relationship with JAFT"; (6) "Signia and the Defendants[] Commingled Funds;" (7) "Signia and the Defendants Entered Into Numerous Promissory Notes Lacking Consideration"; (8) "Signia [has an] Unusual and Undefined Client Relationship with NRPG"; (9) "Signia and the Defendants Maintain Inadequate Corporate Records"; (10) [The] "Nature and Form of Signia's Ownership and Control Facilitate[s] Misuse by Insiders"; (11) Signia and the Federal Court Defendants "Lack [] [Proper] Capitalization"; and (12) Signia and the Federal Court Defendants "Disregard [ ] Legal Formalities."[34] The foregoing are section headings used by Male Excel in the Federal Court Complaint.

At the end of the Federal Court Complaint, Male Excel asserted two causes of action: (1) "Alter Ego Liability Against All Defendants"; and (2) "Declaratory Judgment Against All Defendants."[35]  Although structured as two claims, Male Excel requests the same principal relief: "an order declaring Defendants to be alter egos of Signia" and "an

---

order declaring Defendants to be jointly and severally liable for the obligations of Signia, including the Nevada Judgment . . . ."[36]  The Court refers to the foregoing claims in the Federal Court Complaint as the "Alter Ego Claims".  Male Excel also asked for unspecified "damages" as well as "attorney fees and costs."[37]

The Colorado Federal Action has not proceeded very far.  About two months after it was filed, the Federal Court Defendants filed a joint "Motion to Dismiss."[38]  The Federal Court Defendants argued that the Colorado Federal Court did not have jurisdiction to adjudicate the Federal Court Action because Male Excel's Alter Ego Claims are property of the bankruptcy estate in the Second Bankruptcy Case under Sections 541(a)(1) and/or 544(a) thus vesting the Court with exclusive jurisdiction over the issue.[39]  Furthermore, the Federal Court Defendants contend that the Debtor is an indispensable party to the Federal Court Action but cannot be joined because of the Second Bankruptcy Case.[40]  Male Excel opposed the "Motion to Dismiss" in the Federal Court Action.[41]  The Colorado Federal Court has not ruled on the "Motion to Dismiss" in the Federal Court Action.

E.    The Settlement Agreement.

Meanwhile, the day after Male Excel commenced the Federal Court Action, the Debtor embarked on its own counter-strategy to block Male Excel from pursuing alter ego claims against the Federal Court Defendants.  On September 17, 2024, the Debtor filed a "Motion to Approve Settlement Agreement Between Signia and Related Entities" (the "Settlement Motion").[42]  Through the Settlement Motion, the Debtor sought Court approval for a Settlement Agreement ("the "Settlement Agreement") attached to the Settlement Motion.[43]

The premise of the Settlement Motion and Settlement Agreement is the Debtor's contention that it exclusively owns — as property of the bankruptcy estate under Section 541(a) — the alter ego claims against its own corporate parents (Sulit Group and Vero Investment) as well as Mr. Fell, Mr. Trexler and related entities (JAFT Ventures

---

[36]    *Id*. at 48.
[37]    *Id*.
[38]    Federal Court Action Docket No. 26.
[39]    *Id*. at 7-15. The irony of the Federal Court Defendants' jurisdictional argument is striking. Pursuant to 28 U.S.C. § 1334, Congress provides that "(a) the district court shall have original and exclusive jurisdiction of all cases under title 11. (b). . . the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11. . . (e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction – (1) of all property, wherever located, of the debtor as of the commencement of such chase, and of property of the estate. . . " 28 U.S.C. §§ 1334(a), (b) and (e).  It is only through 28 U.S.C. § 157 that the district courts can, and the United States District Court for the District of Colorado has, referred "any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11. . . to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  It appears to be yet another effort at pitting courts against each other resulting in intentional delay and litigation confusion.
[40]    *Id*. at 15-23.
[41]    Federal Court Action Docket No. 39.
[42]    Second Bankruptcy Case Docket No. 109.
[43]    Second Bankruptcy Case Docket No. 109-1.

and NRPG) all of whom constitute the Federal Court Defendants.[44]  The Debtor contends that "there is no factual basis to assert claims against any of the Related Entities [Federal Court Defendants]."[45]  Nevertheless, ironically, the Debtor proposed to "settle" the alter ego claims against the Federal Court Defendants (its own corporate parents, Mr. Fell, Mr. Trexler, and JAFT Ventures and NRPG) and another related entity mainly by compromising the amounts of certain of the claims of the Federal Court Defendants against the Debtor in the Second Bankruptcy Case.  In return, the Debtor proposes to release the Federal Court Defendants as follows:

> In consideration of the mutual promises set forth in this Agreement and other valuable consideration . . . , *Signia, for itself, the bankruptcy estate,* and their present and former predecessors, successors, assigns, . . . parents, affiliates, . . . related entities, subsidiaries, shareholders, members, managers, officers, directors, trustees, counsel, . . . and other agents hereby waives, releases, discharges, and acquits the Related Entities [Federal Court Defendants], and their present and former predecessors, successors, assigns, . . . parents, affiliates, . . . related entities, subsidiaries, shareholders, members, managers, officers, directors, trustees, counsel, . . . and other agents, from any actual or potential claims, counterclaims, demands, actions, debts, rights, controversies, contracts, liabilities, damages, or causes of action whatsoever, known or unknown, whether direct or derivative, *belonging to Signia or the bankruptcy estate from the beginning of time to through and including the first date that this Agreement is executed, including, without limitation,* causes of action and remedies arising under Chapter 5 of the Bankruptcy Code, including pursuant to Sections 542-549 of the Bankruptcy Code; causes of action and remedies arising under the Colorado Uniform Fraudulent Transfer Act or the fraudulent transfer statute or common law of any other state or jurisdiction; causes of action and remedies sounding in fraud of any kind, whether brought under statute or common law of any jurisdiction; breach of fiduciary duty causes of action and remedies of any kind, whether brought under statute or common law of any jurisdiction; *and alter ego causes of action and remedies of any kind, whether brought under statute or common law of any jurisdiction, including, without limitation, veil piercing, reverse veil piercing, horizontal veil piercing,* single enterprise theory, common enterprise theory, substantive consolidation; and any legal claim, theory or doctrine of a similar nature.[46]

Male Excel opposed the Settlement Motion and argued, among other things, that the Settlement Agreement was a facially bad faith effort to protect the Debtor's insiders: the Federal Court Defendants.[47]  After further discovery and litigation, the Court

---

[44]     Second Bankruptcy Case Docket No. 109 at 4 ("the Agreement contemplates the compromise only of potential claims and causes of action that belong to Signia and the bankruptcy estate.").
[45]     *Id.* at 5.
[46]     Second Bankruptcy Case Docket No. 109-1 at 4-5 (emphasis added).
[47]     Second Bankruptcy Case Docket 139 at 9-11.

conducted a two-day trial on the Settlement Motion on March 31 and April 1, 2025.[48]
The Court has not yet determined whether the Settlement Agreement should be
approved.

**F.     The Adversary Proceeding.**

        The day after filing the Settlement Motion, on September 18, 2024, the Debtor
embarked on another front in the incessant litigation war by initiating this Adversary
Proceeding: *Signia Ltd. v. Male Excel Medical, P.A. and Male Excel, Inc. (In re Signia,
Ltd.)*, Adv. Pro. No. 24-1214 TBM (Bankr. D. Colo.).[49]

        **1.     The Amended Complaint.**

        A few weeks after starting the Adversary Proceeding, the Debtor filed a "First
Amended Complaint for (A) Declaratory and Injunctive Relief and (B) Damages" (the
"Amended Complaint").[50]  The Amended Complaint is the operative pleading advanced
by the Debtor and basically is a mirror-image of the Federal Court Defendants' Motion
to Dismiss the Federal Court Action.  The purpose of the Amended Complaint is to
block Male Excel from pursuing the Federal Court Action against the non-Debtor
Federal Court Defendants by asserting that the Debtor owns the Alter Ego Claims
advanced by Male Excel.  In the Amended Complaint, the Debtor states, among other
things:

>       9.     Male Excel's Claim is based on a judgment that Male
>       Excel obtained against Debtor in Nevada State Court for
>       Debtor's alleged breach of the parties' contracts and breach
>       of the implied covenant of good faith and fair dealing, along
>       with post-trial attorney fees and costs (the "Nevada
>       Judgment").  The Nevada Judgment is currently on appeal
>       before the Nevada Supreme Court.
>
>       10.     On September 16, 2024, Male Excel commenced a
>       civil action in the United States District Court for the District
>       of Colorado, Case No. 1:24-cv-02539-KAS (the "USDC
>       Case") against the following individuals and entities: Alfred
>       Trexler, Jeffrey Fell, Sulit Group, Ltd., Vero Investment
>       Company, JAFT Ventures, LLC, and National Research and
>       Polling Group, Ltd. (together, the "Related Entities").
>
>       11.     Male Excel asserts two causes of action in the USDC
>       Case: (1) "Alter Ego Liability" against the Related Entities
>       and (2) declaratory relief authorizing the piercing of Debtor's
>       corporate veil.  In short, Male Excel's USDC Case seeks a
>       legal determination that Debtor and the Related Entities are

---

[48]       Second Bankruptcy Case Docket Nos. 260 and 261.
[49]       Docket No. 1.
[50]       Docket No. 4.

11

one and the same such that the Related Entities' assets should be available to pay Debtor's liabilities, including Male Excel's Claim in the Bankruptcy Case.

12.     On September 17, 2024, the Debtor filed a motion seeking approval of a settlement agreement (the "Settlement Agreement") with various individuals and entities, including the Related Entities.  *See* Docket No. 109.

13.     Although filed after the USDC Case, the Settlement Agreement was negotiated in August and September 2024, and fully-executed by September 16, 2024.

14.     The Settlement Agreement resolves all claims by and between the Debtor and the Related Entities, including any potential alter ego claims.

15.     Male Excel's USDC Case appears to be an effort to "judge shop" by securing a more favorable forum to resolve these issues outside of the Bankruptcy Case.

The foregoing are the only "General Allegations" alleged in the Amended Complaint.

Based on such factual allegations, the Debtor asserted a single cause of action for violation of the Section 362(a)(3) automatic stay: "Declaratory and Injunctive Relief, Damages – Violation of the Automatic Stay."[51]  The Debtor alleged:

17.     11 U.S.C. § 362(a)(3) enjoins "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

18.     The causes of action pled in the USDC Case are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) (defining property of the estate as all "legal or equitable interests of the debtor in property as of the commencement of the case) and/or 11 U.S.C. § 544(a)(1) (conferring "the rights and powers" of judgment lien creditors).

19.     Indeed, Male Excel's USDC Case does not allege any particularized harm to Male Excel.  Instead, it simply seeks the generalized relief of holding the Related Entities responsible for Debtor's liabilities, including Male Excel's claim against Debtor in the Bankruptcy Case.  As such, this claim belongs to the bankruptcy estate because access to the Related Entities' assets equally benefits all unsecured

---

[51]     Docket No. 4 at 3.

creditors.

20.     Male Excel's commencement of the USDC Case therefore constitutes "an act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" in violation of 11 U.S.C. § 362(a)(3).

21.     Debtor seeks entry of an order enjoining Male Excel from further prosecution of the USDC Case because such civil action is violative of the automatic stay.

Additionally, the Debtor requested an award of damages for alleged "willful and deliberate" violation of the Section 362(a)(3) automatic stay.

Meanwhile, the Debtor also asked for injunctive relief and submitted a "Motion for (A) Temporary Restraining Order; (B) Preliminary Injunction; and (C) Forthwith Hearing" (the "Injunctive Motion").[52]  Shortly thereafter, the Debtor filed a "Supplement to Motion for (A) Temporary Restraining Order; (B) Preliminary Injunction; and (C) Forthwith Hearing" (the "Supplement").[53]  The Debtor attached copies of the Federal Court Complaint and Settlement Agreement to the Supplement.  So, those documents, which were referenced in the Amended Complaint are part of the record in this Adversary Proceeding.  In any event, the Court denied the issuance of a temporary restraining order and joined the request for a preliminary injunction with a trial on the merits of the Adversary Proceeding.[54]

### 2.     The Motion to Dismiss and Response.

Instead of answering the Amended Complaint, Male Excel filed the Motion to Dismiss contending that the Court should dismiss the Amended Complaint for "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6), which is applicable per Fed. R. Bankr. P. 7012(b).   The relief requested by Male Excel would effectively allow Male Excel to continue the Federal Court Action.  Male Excel asserts two main arguments in the Motion to Dismiss: (1) the Section 362(a) automatic stay does not apply to actions (like the Federal Court Action) brought against non-debtor third parties; and (2) the right to recover on Male Excel's Alter Ego Claims in the Federal Court Action is not "property of the [bankruptcy] estate."  As a result, Male Excel contends that (even accepting the factual allegations in the Amended Complaint as true) the Debtor cannot state a claim for violation the Section 362(a)(3) automatic stay.

Thereafter, the Debtor filed the Response contesting dismissal of the Amended Complaint.  The Debtor concedes that (subject to certain exceptions not applicable in the Adversary Proceeding) the Section 362(a) stay does not apply to third parties such as the Federal Court Defendants.  But, the Debtor notes that it is not asking for the

---

[52]     Docket No. 5.
[53]     Docket No. 10.
[54]     Docket No. 12.

Section 362(a) stay to be extended to the Federal Court Defendants.  Instead, the Debtor's position is that Male Excel violated the Section 362(a)(3) stay because the Alter Ego Claims asserted in the Federal Court Action are "property of the [bankruptcy] estate."  The contest over the Motion to Dismiss and Response is fully briefed and involves only legal issues.

### IV.     Standards Governing Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

The Court's approach to the Motion to Dismiss and Response starts with the applicable federal rules of procedure.  In this case, Male Excel asserts that the Amended Complaint should be dismissed for "failure to state a claim upon which relief can be granted" pursuant to Fed. R. Civ. P. 12(b)(6), which is applicable per Fed. R. Bankr. P. 7012(b).

### A.     Law Applicable to Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12(b)(6) provides:

> Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion . . . failure to state a claim upon which relief can be granted . . . .

When considering a motion to dismiss under Fed R. Civ. P. 12(b)(6) (as incorporated by Fed. R. Bankr. P. 7012(b)), the Court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the plaintiff.  *Burnett v. Mortg. Elec. Registration Sys., Inc.*, 706 F.3d 1231, 1235 (10th Cir. 2013).  Under the refined pleading standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  *See also Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (referring to clarified standard under *Twombly* and *Iqbal* as a "refined standard").

Under the "refined standard," a claim is considered "plausible" when the complaint contains facts which allow the Court "to draw a reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "Plausible" does not mean "probable", although the plaintiff must show that its entitlement to relief is more than speculative.  *Id.*; *Twombly*, 550 U.S. at 555.  If the allegations in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."  *Kan. Penn*, 656 F.3d at 1215.  Put another way, "the complaint must give the Court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

"The nature and specificity of the allegations required to state a plausible claim will vary based on context."  *Kan. Penn*, 656 F.3d at 1215; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").  Thus, the Tenth Circuit has held that "the *Twombly/Iqbal* standard is 'a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.'"  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (citing *Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)) (internal quotation marks and citations omitted in *Khalik*).

The Court is bound to accept only factual allegations as true and will not give deference to legal conclusions.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 578.  Legal conclusions must be supported by well-pleaded factual allegations, which can be assumed as true and evaluated as to whether they plausibly give rise to the requested relief.  *Id.*  This process is a context-specific task which depends on the elements of a particular claim and requires the Court to draw upon its judicial experience and common sense.  *Burnett*, 706 F.3d at 1236 (quoting *Iqbal*, 556 U.S. at 679).  Careful evaluation is necessary both to ensure that a defendant is sufficiently able to prepare his defense and "to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim."  *Kan. Penn*, 656 F.3d at 1215 (internal quotation omitted).

Ultimately, the critical question is: "assum[ing] the truth of all well-pleaded facts . . . and draw[ing] all reasonable inferences therefrom in the light most favorable to the plaintiffs," whether the complaint "raise[s] a right to relief above the speculative level.'" *Dias v. City & County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 550 U.S. at 555).  It is a low threshold.  "[G]ranting [a] motion to dismiss is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice."  *Dias*, 567 F.3d at 1178 (quoting *Duran v. Carris,* 238 F.3d 1268, 1270 (10th Cir. 2001)).  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes,* 416 U.S. 232, 236, (1974)).

## B.   Exclusion of Extraneous Materials.

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is not a mechanism to dispute the facts.  *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135 (10th Cir. 2014) ("The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted.").  Accordingly, when ruling on a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court "must examine only the plaintiff's complaint [and] must determine if the complaint alone is sufficient to state a claim."  *Jackson v. Integra, Inc.*, 952 F.2d 1260, 1261 (10th Cir. 1991); *see also Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d

956, 961 (10th Cir. 2001) (generally "unacceptable for a court" to look "beyond the four corners of the complaint" when deciding a "Rule 12(b)(6) motion to dismiss"); *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991) (same).  The Court "cannot review matters outside of the complaint."  *Integra*, 952 F.2d at 1261.

In deciding whether materials are "outside the complaint," the Court obviously considers exhibits physically appended to the complaint as part of the complaint. Additionally:

> . . . if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss . . . .

*GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997) (citations omitted); *Burke v. Holdman*, 750 Fed. Appx. 616, 620 (10th Cir. Sept. 13, 2018) (unpublished).

The narrow exception allows the Court to consider certain documents which are central to the complaint:

> If this rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied. Moreover, conversion to summary judgment when a district court considers outside materials is to afford the plaintiff an opportunity to respond in kind.  When a complaint refers to a document and the document is central to the plaintiff's claim, the plaintiff is obviously on notice of the document's contents, and this rationale for conversion to summary judgment dissipates.

*GFF Corp.,* 130 F.3d at 1385 (citations omitted); *Burke*, 750 Fed. Appx. at 620.  The reason for the foregoing is obvious.  Motions to dismiss under Fed. R. Civ. P. 12(b)(6) are designed merely to test to the sufficiency of the allegations presented by the plaintiff in the complaint.  To adjudicate a Fed. R. Civ. P. 12(b)(6) motion to dismiss, the Court is supposed to accept the well-pleaded factual allegations in the complaint as true.  *Iqbal*, 556 U.S. at 678; *Burnett*, 706 F.3d at 1235.  And, then, the process requires the Court to consider whether the plaintiff's allegations — accepted as true — are sufficient to "state a claim upon which relief can be granted."

Both the Debtor and Male Excel recognize the foregoing exception to this general procedural sequence under Fed. R. Civ. P. 12(b)(6).  The Amended Complaint expressly refers to the Judgment in the Nevada Action, the Federal Court Complaint, and the Settlement Agreement.  Such documents are all central to the Debtor's claim in the Amended Complaint.  The Debtor also attached the Complaint in the Federal Court

Action and the Settlement Agreement to a pleading in this Adversary Proceeding.[55] Similarly, Male Excel attached the Complaint in the Federal Court Action to the Motion to Dismiss.[56]  In any event, all the foregoing referenced materials are central to the Amended Complaint, are part of Court records (including from the Colorado Federal Court of which this Court is a "unit;" *see* 28 U.S.C. § 151) for which the Court may take judicial notice, and may properly be considered by the Court in adjudicating the Motion to Dismiss.  *GFF Corp.*, 130 F.3d at 1384-85; *Burke*, 750 Fed. Appx. at 620. Accordingly, the Court's consideration of the Judgment in the Nevada Action, the Federal Court Complaint, and the Settlement Agreement are proper in the circumstances of the Adversary Proceeding under motion to dismiss standards.

## V.   Legal Analysis and Conclusions.

### A.   The Automatic Stay and Male Excel's Alleged Violation.

The filing of a bankruptcy petition generally operates as an automatic stay of certain acts against the Debtor or the Debtor's property, as set forth Section 362(a). And, it is common ground as between the Debtor and Male Excel that, generally, the automatic stay does not extend to non-debtor persons or entities.  *Okla. Federated Gold and Numismatics, Inc. v. Blodgett*, 24 F.3d 136, 141 (10th Cir. 1994) ("While § 362 extends the stay provisions of the Bankruptcy Code to the "debtor," the rule followed by this circuit and the general rule in other circuits is that the stay provision does not extend to solvent codefendants of the debtor.  *Fortier v. Dona Anna Plaza Partners,* 747 F.2d 1324, 1330 (10th Cir.1984) (citing other circuits).").  *See also Global Logistics Sols., LLC v. CIAO Group, Inc.*, 2016 WL 1586425, at *3 (D. Colo. Apr. 20, 2016) ("By its plain language, the statute [Section 362(a)] applies the stay only to actions or proceedings '*against the debtor.*'").

In the Amended Complaint, the Debtor alleges that Male Excel violated the automatic stay by prosecution of the Federal Court Action.  The Debtor relies exclusively upon Section 362(a)(3) as the basis for the Amended Complaint.  Section 362(a)(3) prohibits:

> . . . any act to obtain possession of *property of the estate* or *property from the estate* or exercise control over *property of the estate*.

11 U.S.C. § 362(a)(3) (emphasis added).  Ultimately, in an action asserting a violation of the stay, "[t]he moving party bears the burden of proof and must prove the violation by a

---

[55]     Docket No. 5.  *See also* Docket No. 16 (Debtor states:  "Although the complaint in the USDC case was not attached to the Complaint [in the Adversary Proceeding], the Debtor does not dispute that it may be considered in connection with the Motion to Dismiss.  However, the Court may only consider the complaint in the USDC Case for the purpose of determining what statements the document contains, not to prove the truth of the document's contents").

[56]     Docket No. 14.  Male Excel cited *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) and *Allmon v. Bureau of Prisons*, 2015 WL 2148226, at *2 (D. Colo. 2015) for the proposition that the Court may consider matters referenced in the Amended Complaint as well as matters for which the Court may take judicial notice.

preponderance of the evidence." *Gazzo v. Ruff (In re Gazzo)*, 505 B.R. 28, 35 (Bankr. D. Colo. 2014) (citing *In re Sullivan*, 357 B.R. 847, 854 (Bankr. D. Colo. 2006)).  But, for now, the Debtor need only meet the lesser standards under Fed. R. Civ. P. 12(b)(6), as incorporated by Fed. R. Bankr. P. 7012.

## B.   The Alter Ego Claims Are Not Property of the Estate Under Section 541(a).

To determine whether the Debtor can state a claim for relief in the Amended Complaint under Section 362(a)(3), the key statutory phrase which must be evaluated is: "property of the estate."  Section 541 — which is titled "Property of the Estate" — defines "property of the estate," in relevant part, as follows:

> (a)   The commencement of a case under section 301, 302, or 303 of this title creates an estate.  Such estate is comprised of all the following property, wherever located and by whomever held:
>
> (1)   . . . all legal or equitable interests of the debtor in property as of the commencement of the case.
>
> . . .
>
> (3)   Any interest in property that the trustee recovers under section 329(b), 363(n), 543, 550, 553, or 723 of this title.
>
> (4)   Any interest in property preserved for the benefit of or ordered transferred to the estate under section 510(c) or 551 of this title.
>
> . . . [or]
>
> (7)   Any interest in property that the estate acquires after the commencement of the case.

In the Amended Complaint, the Debtor asserted only:  "The causes of action pled in the [Federal Court Action] are property of the bankruptcy estate pursuant to 11 U.S.C. § 541(a)(1) . . . and/or 11 U.S.C. § 544(a)(1)."[57]  Put another way, the Debtor relies exclusively on Sections 541(a)(1) and 544(a)(1) as the predicate for the alleged violation of the Section 362(a)(3) automatic stay by Male Excel.

The Court starts its legal analysis focusing first on Section 541(a)(1) and whether Male Excel's Alter Ego Claims in the Federal Court Action are "property of the estate" under that statute.  The issue of what property interests are included in the estate under Section 541 "is a matter of federal bankruptcy law, but the nature and extent of a debtor's property interests are determined by reference to state law." *Rafter Seven*

---

[57]   Docket No. 4 at 3.

*Ranches, L.P. v. WNL Inv. L.L.C. (In re Rafter Seven Ranches, L.P.)*, 414 B.R. 722, 734 (10th Cir. BAP 2009).  The Supreme Court put it this way:

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.  Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy."  The justifications for application of state law are not limited to ownership interests; they apply with equal force to security interests, including the interest of a mortgagee in rents earned by mortgaged property.

*Butner v. U.S.*, 440 U.S. 48, 55 (1979) (citations omitted).

Specifically with respect to analysis of alter ego claims,[58] the federal courts (at all levels) have uniformly held that state law must be analyzed to determine whether alter ego claims are property of the bankruptcy estate under Section 541(a).  *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989) ("We agree with those courts that have held that the determination of whether [an alter ego] claim may be brought by a creditor of a bankrupt corporation outside of the bankruptcy proceedings depends on an analysis of state law."); *Steyr-Daimler-Puch of Am. Corp. v. Pappas*, 852 F.2d 132 (4th Cir. 1988) (applying Virginia law to assess whether alter ego claims are property of the estate under Section 541(a)(1)); *Koch Refining v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339 (7th Cir. 1987) (applying Illinois and Indiana law to assess whether alter ego claims are property of the estate under Section 541(a)(1)); *ADEMA Tech., Inc. v. Eiffert,* 2014 WL 1207431, at *2 (D. Colo. Jan. 29, 2014), *Report and Recommendation Adopted in Part, and Rejected in Part*, 2014 WL 1099770 (D. Colo. Mar. 19, 2014) ("I apply Colorado law to . . . the alter ego analysis.); *Amazing Enters. v. Jobin (In re M & L Bus. Mach. Co., Inc.)*, 136 B.R. 271, 278 (Bankr. D. Colo. 1992), *aff'd*, 160 B.R. 850 (D. Colo. 1993) ("The question of ownership of the alter ego action turns on who owns the action under state law"; applying Colorado law).

Male Excel concurs that "the question of whether the alter ego causes of action here are property of a bankruptcy estate [under Section 541(a)(1)] is governed by Colorado law."[59]  The Debtor elected to forego all Section 541(a)(1) argument (including choice of State law) at this juncture and instead focuses on Section 544(a) alone.[60]

---

[58]     Although the Court uses the term "alter ego claims," the Court recognizes that those claims are sometimes referred to as "veil-piercing claims."  The terms are synonymous.

[59]     Docket No. 14 at 13.

[60]     Docket No. 16 at 9 n. 2.  ("Debtor reserves all rights to assert that the alter ego causes of action are property of the estate pursuant to 11 U.S.C. § 541(a)(1), consistent with precedent from several circuits. . . .  However, this Response [to the Motion to Dismiss] includes argument only as to the ownership under 11 U.S.C. § 544(a) because, as set forth in detail herein, that is the better-reasoned

The Court assesses that Colorado state law is the state law applicable to ownership of the Alter Ego Claims under Section 541(a)(1).  The Debtor is a Colorado limited liability company, and all the Federal Court Defendants are Colorado corporate entities or individuals.  The Second Bankruptcy Case was filed in Colorado.  And, the Debtor has not contested the application of Colorado law within the Section 541(a)(1) rubric.

The leading case applying Colorado law to assess whether alter ego claims are "property of the estate" under Section 541(a)(1) is *M & L*, 136 B.R. 271.  *M & L* stemmed from a Ponzi scheme.  Creditors holding $21,000,000 worth of claims against the debtor sued various parties controlling third parties in state court on alter ego and other theories.  The core question before the United States Bankruptcy Court for the District of Colorado (Clark, B.J.) was "whether the Plaintiffs [creditors] are or should be precluded from pursuing their own [alter ego and other] claims against various individuals and entities who allegedly are responsible for their investments in *M & L*.  The Trustee [for *M & L*] contends that the claims . . . are assets of the estate as defined by 11 U.S.C. § 541."  *Id.* at 274.  The *M & L* trial court applied Colorado law and held:

> Thus, the question of ownership of the alter ego action turns upon who owns the action under state law.  In Colorado, an alter ego action to pierce the corporate veil belongs to the creditors of the corporation, not to the corporation itself.  See *Colorado Finance Co. v. B.F. Bennet Oil Co.,* 110 Colo. 1, 129 P.2d 299 (1942); accord, *In re Loughnane,* 28 B.R. 940, 942 (Bankr. D.Colo.1983).  Such an action fastens liability on the individual who used the corporation as a mere instrumentality for his own personal business and benefit.  The liability itself arises from fraud or injustice perpetrated not on the corporation, but on third persons dealing with the corporation.  1 Fletcher Cyclopedia on the Law of Private Corporations § 41.10 at 615 (1990 ed.).  Furthermore, the corporate veil is not pierced for the benefit of the corporation debtor.  *Id.;* accord, *Davis v. Merv Griffin Co. (In re Merv Griffin Co.),* 128 B.R. 78, 96 (D. N.J. 1991).  Hence, an alter ego action is quite distinct from a lawsuit to recover a preferential transfer based upon a breach of fiduciary duty as was involved in *Delgado* or a statutory action to hold a director liable for improper distributions.

> The Court concludes that the Trustee does not own the alter ego action raised by the Plaintiffs.  This Court will not follow those decisions which have allowed alter ego actions to be raised by a trustee when there is no basis for estate ownership of the action under state or common law.

---

approach, it is consistent with Tenth Circuit precedent, and it distinguishes lower court rulings that have failed to follow Tenth Circuit precedent.").

*Id*. at 278.

The trustee in *M & L* argued that *Delgado Oil Co. v. Torres*, 785 F.2d 857 (10th Cir. 1986) "support[ed] her right to pursue the alter ego claims." *M & L*, 136 B.R. at 277. The *M & L* court was unpersuaded and distinguished the *Delgado* case: "The *Delgado Oil* case involved an action alleging preferential transfer by a director of the debtor corporation. The court [*Delgado*] found that the action could not be maintained outside the bankruptcy court because the trustee has the right 'to recover damages for misconduct, mismanagement, or neglect of duty by a corporate officer of director.' The court rejected the plaintiff's pleading that the action was one at common law [the limited fiduciary duty running from the directors of an insolvent corporation to the creditors not to self-deal]." *M & L*, 136 B.R. at 277. Moreover, the preferential transfers were corporate assets for the "director's benefit" and, as such, "is maintainable only through the debtor corporation." *Id*. Recognizing that alter ego claims were not asserted in the *Delgado* case, the *M & L* court noted the differences between recovery of a preferential transfer of a corporation's property and an alter ego claim. An alter ego action:

> fastens liability on the individual who used the corporation as a mere instrumentality for his own personal business and benefit. The liability itself arises from fraud or injustice perpetrated not on the corporation but on third persons dealing with the corporation . . . Furthermore, the corporate veil is not pierced for the benefit of the corporation debtor. Hence, an alter ego action is quite distinct from a lawsuit to recover a preferential transfer based upon a breach of fiduciary duty as was involved in *Delgado* . . . .

*Id*. at 278 (internal citations omitted).

On appeal, the United States District Court for the District of Colorado (Kane, D.J.) affirmed and fully endorsed the analysis undertaken by Bankruptcy Judge Clark:

> In its decision below the bankruptcy court undertook a thorough review of case law addressing a bankruptcy trustee's standing to bring claims on behalf of creditors against third parties, and I concur with its analysis.

*M & L*, 160 B.R. at 851.

This has been the governing law in this jurisdiction for more than thirty years. *See also In re Loughnane*, 28 B.R. 940, 942 (Bankr. D. Colo. 1983) (individual debtor challenged action of Internal Revenue Service in assessing taxes against his wholly owned corporation as an alleged violation of Section 362(a)(3) automatic stay claiming he and the corporation were alter egos; court held that debtor could not "pierce the corporate veil on his own behalf" to protect the assets of his corporation which were not property of the estate).

The *M & L* decision and its Section 541(a)(1) analysis of alter ego claims has been cited with approval repeatedly. For example, *ADEMA Tech.* 2014 WL 1207431, involved a complaint for alter ego and other claims against corporate insiders seeking a declaration that the defendants were alter egos of a debtor whose corporate veil should be pierced. The defendants moved to dismiss by challenging the plaintiff's standing and asserting, in part that the plaintiff was pursuing property of a bankruptcy estate of which one of the defendants was the alleged alter ego. They argued further that the complaint failed to contain sufficient allegations to support a claim for piercing the corporate veil. In his Report and Recommendation, Magistrate Judge Boland relied upon *M & L* to recognize the plaintiff's standing to assert the alter ego claim but dismissed the alter ego claim for failing to state sufficient factual allegations to support the claim. On review of the Report and Recommendation, the District Court upheld the plaintiff's standing to pursue the alter ego claim stating "[u]nder Colorado law, 'an alter ego action to pierce the corporate veil belongs to the creditors of the corporation, not the corporation itself.'" *ADEMA Tech.*, 2014 WL 1099770, at *2 (quoting *M & L* with approval) (Arguello, D.J.).[61]

So, long-standing precedent from the United States Bankruptcy Court for the District of Colorado and the United States District Court for the District of Colorado — applying Colorado law — dictates that the Alter Ego Claims asserted by Male Excel in the Federal Court Action are not "property of the estate" within the meaning of Section 541(a)(1).

However, the Court mines deeper and assesses Colorado precedent independently. Colorado has long recognized alter ego claims in the corporate context. The Colorado Supreme Court stated the classic formulation in *Connolly v. Englewood Post No. 322 Veterans of Foreign Wars of the U.S. (In re Phillips)*, 139 P.3d 639 (Colo. 2006).

> . . . Colorado does permit traditional piercing of the corporate veil in extraordinary circumstances. The concepts of traditional veil piercing aid in our determination of whether reverse piercing is permitted under Colorado law. We review them briefly.
>
> Generally, a duly formed corporation is treated as a separate legal entity, unique from its officers, directors, and shareholders. This separate status isolates the actions, profits, and debts of the corporation from the individuals who

---

[61]   However, the United States District Court for the District of Colorado rejected the part of the Report and Recommendation that dismissed the alter ego claim for failing to state a claim. It reasoned that "a claim based on the alter ego theory is not in itself a claim for substantive relief, but is instead a theory of liability. *ADEMA Tech.*, 2014 WL 1099770, at *2. "Moreover, 'an action to pierce the corporate veil is not a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment.'" *Id*. at *2 n.2 (quoting *Swinerton Builders v. Nassi*, 272 P.3d 1174, 1177 (Colo. App. 2012).

invest in and run the entity . . . .  [and] protects shareholders from individual liability for the actions of the corporation.

Traditional piercing penetrates the corporate veil and imposes liability on individual shareholders for the obligations of the corporation.  Individual liability is appropriate when the corporation is merely the alter ego of the shareholder and the corporate structure is used to perpetuate a wrong.  In such extraordinary circumstances, the courts may ignore the independent existence of the business entity and pierce the corporate veil to achieve an equitable result.

To determine whether piercing the corporate veil is appropriate, the court must first inquire into whether the corporate entity is the alter ego of the shareholder . . . .  An alter ego relationship exists when the corporation is a "mere instrumentality for the transaction of the shareholders' own affairs, and there is such unity of interest in ownership that the separate personalities of the corporation and the owners no longer exist."

In establishing whether such unity of interest exists as to disregard the corporate fiction and treat the corporation and shareholder as alter egos, courts consider a variety of factors, including whether (1) the corporation is operated as a distinct business entity, (2) funds and assets are commingled, (3) adequate corporate records are maintained, (4) the nature and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes.  These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim."  Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity.  Achieving an equitable result is the

> paramount goal of traditional piercing of the corporate veil.
> A claimant seeking to pierce the corporate veil must make a
> convincing showing that each consideration has been met.

*Id*. at 643-44 (citations omitted).  So, Colorado recognizes the traditional alter ego claim[62] in which a creditor of the corporate debtor sues the debtor's shareholders to satisfy the debtor's debt to the creditor.

And, Colorado has expanded the alter ego theory to also cover reverse piercing pursuant to which liability may "be imposed on the corporation for acts of a dominant shareholder or other corporate insider."  *Phillips*, 139 P.3d at 644-47 ("we hold that Colorado law permits outside reverse piercing claims when a dominant shareholder and corporation are alter egos").  Colorado alter ego law also extends (with some distinctions) to limited liability companies.  COLO. REV. STAT. § 7-80-107; *see also Griffith v. SSC Pueblo Belmont Operating Co. LLC,* 381 P.3d 308, 312-13 (Colo. 2016) (recognizing that Colorado legislature extended corporate veil piercing common law to limited liability companies); *Weinstein v. Colborne Foodbotics, LLC,* 302 P.3d 263, 268 (Colo. 2013) (same); *Sedgwick Prop. Dev. Corp. v. Hinds,* 456 P.3d 64 (Colo. App. 2019) (same); *Martin v. Freeman,* 272 P.3d 1182, 1184 (Colo. App. 2012) (same).  Most recently, the Colorado Court of Appeals also decided that "horizontal veil piercing may occur between entities that do not share common owners, but that indirectly share common owners through another entity in the ownership chain.  However, the veils between the separate entities and their owners in the ownership chain must first be pierced."  *Dill v. Rembrandt Grp., Inc.*, 474 P.3d 176, 183 (Colo. App. 2020).

In the Federal Court Action (and as illustrated by the corporate structure chart incorporated above which is merely a graphic illustration of the allegations in the Federal Complaint), Male Excel seeks to engage in traditional upstream alter ego claims against the owners of Signia:  Sulit Group and Vero Investment.  Then, if successful at the initial tier, Male Excel is asserting second stage traditional alter ego claims against the owners of Sulit Group and Vero Investments:  Messrs. Fell and Trexler.  Furthermore, if successful at the initial tier, Male Excel appears to assert horizontal alter ego claims against JAFT Ventures and NRPG (sister entities to the Debtor).  Perhaps Male Excel will be successful; or maybe not.  However, the foregoing

---

62      There is some confusion in the case law whether use of an alter ego theory is a "claim" or merely a "remedy."  Most Colorado courts (and Federal courts construing Colorado law) seem to expressly or implicitly acknowledge that alter ego may be pled as a "claim."  *See Weinstein v. Colborne Foodbotics, LLC,* 302 P.3d 263, 268 (Colo. 2013) ("Section 7-80-107(1) . . . applies corporation common law to a *claim* for piercing the entity veil . . . ."); *Sedgwick Prop. Dev. Corp. v. Hinds,* 456 P.3d 64, 68 (Colo. App. 2019)("The burden of proof for establishing a *claim* to pierce the corporate veil . . . .) (emphasis added); *Martin v. Freeman*, 272 P.3d 1182, 1184 (Colo. App. 2012) ("Martin initiated this *action* to pierce the LLC veil.") (emphasis added).  In *Phillips*, 139 P.3d at 647, the Colorado Supreme Court characterized alter ego as both a "remedy" and a "claim[ ]."  ("[P]iercing the corporate veil is an extraordinary *remedy* . . . [and] Colorado law permits outside reverse piercing *claims* . . . .") (emphasis added);.  However, some courts characterize it differently: "[A]n action to pierce the corporate veil is not a separate and independent cause of action, but rather is merely a procedure to enforce an underlying judgment." *Swinerton Builders v. Nassi*, 272 P.3d 1174, 1177 (Colo. App. 2012).  The distinction makes no real difference in the Adversary Proceeding.  Male Excel pled alter ego as a separate and independent claim but also stated a declaratory judgment claim requesting an alter ego determination.

Alter Ego Claims are not the Debtor's property as a matter of Colorado law. *M & L*, 136 B.R. at 278.

The Court's independent research on the topic suggests that Colorado courts have never allowed Colorado corporations or limited liability companies to bring alter ego claims against their own owners (*i.e.* traditional alter ego piercing which is the first tier of Male Excel's Alter Ego Claims).[63] Instead, Colorado courts have only permitted creditors to engage in the tradition veil piercing exercise. *See e.g. Rosebud Corp. v. Boggio*, 561 P.2d 367, 371 (Colo. App. 1977) ("The alter ego doctrine is a means by which *creditors* may hold stockholders personally liable for corporate obligations.") (emphasis added); *Lowell Staats Mining Co., Inc. v. Pioneer Uravan, Inc.*, 878 F.2d 1259, 1262 (10th Cir. 1989) (construing Colorado alter ego law; "The alter ego doctrine is a means by which *creditors* may hold stockholders personally liable for corporate obligations."); *Eckles v. Petco Inc. (In re Balducci Oil Co., Inc.),* 33 B.R. 847, 853 (Bankr. D. Colo. 1983) (same). And, as pointed out in *M & L*, this appears to be a long-standing feature of Colorado law going back to *Colo. Fin. Co. v. B.F. Bennett Oil Co.*, 129 P.2d 299, 302 (Colo. 1942) ("The cloak of corporate protection of liability may not be shed or donned to suit the personal whim or caprice of its officers . . . ."). The Debtor has not advanced any argument otherwise or cited any Colorado law supporting its ownership of the Alter Ego Claims under Section 541(a)(1) as "property of the estate." Accordingly, the Court determines as a matter of law based on the Amended Complaint (supplemented by the  Federal Court Complaint), that the Debtor has failed to state a claim that Male Excel's Alter Ego Claims are "property of the estate" within the meaning of Section 541(a)(1) such that Male Excel's prosecution of the Federal Court Complaint constitutes a violation of Section 362(a)(3).

C.   **The Debtor Cannot Establish a Violation of the Section 362(a)(3) Stay Based on Section 544(a)(1).**

"Causes of action commenced by a trustee fall into two broad categories: (1) actions brought by the trustee as successor to the debtor's interest included as property of the estate under 11 U.S.C. § 541, and (2) actions brought under one of the trustee's avoidance powers . . . . Because § 544 gives a trustee certain avoidance powers, actions brought under that section fall within the second category of types of trustee actions." *Sender v. Simon*, 84 F.3d 1299, 1304 (10th Cir. 1996). As set forth above, the Alter Ego Claims advanced by Male Excel in the Federal Court Action are not property of the estate under Section 541(a)(1). So, as an alternative, in its Amended Complaint, the Debtor asserts that Male Excel's Alter Ego Claims are "property of the estate" under the second category of types of trustee actions: Section 544(a)(1). That Section does not expressly define or construe "property of the estate" and, instead, is titled: "Trustee as lien creditor and as successor to certain creditors and purchasers." Section 544(a)(1) provides:

---

[63]      However, in candor, the Court recognizes that Colorado courts have not been presented with non-creditor traditional veil piercing claims in reported decisions. Perhaps that is because it is unlikely that corporate entities will sue their owners. Furthermore, the Court is unaware of any reported derivative actions brought by minority shareholders asserting that the corporate entity owns alter ego claims against dominant shareholders which may be pursued by minority shareholders pursuant to Colo. R. Civ. P. 23.1.

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by (1) a creditor that extends credit to the debtor at the time of the commencement of the case and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such judicial lien, whether or not such a creditor exists.

11 U.S.C. § 544(a)(1).  Although Section 544(a)(1) refers to "the trustee," that phrase includes a Chapter 11 debtor-in-possession, such as the Debtor.  11 U.S.C. § 1107(a) ("[A] debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties . . . of a trustee.); *see also Zilkha Energy Co. v. Leighton*, 920 F.2d 1520, 1523 (10th Cir. 1990) ("a debtor in possession is clothed with all powers of a trustee.").

So, after a bankruptcy case is filed, Section 544(a)(1) generally allows the trustee standing to step into the shoes of a hypothetical judgment creditor.  *Sender v. Porter (In re Porter McLeod, Inc.)*, 231 B.R. 786, 792 (D. Colo. 1999) (trustee has same powers as "certain hypothetical ideal creditors" including a judicial lien creditor, a creditor holding an execution returned unsatisfied, or a bona fide purchaser of real property).  The Tenth Circuit explained the general role of Section 544(a)(1) this way:

> To understand the full import of § 544, one must first understand the power of a bankruptcy trustee to stand in the shoes of an hypothetical creditor of the debtor to effect a recovery from a third party.  Simply stated, from the reservoir of equitable powers granted to the trustee to maximize the bankruptcy estate, Congress has fashioned a legal fiction.  Not only is a trustee empowered to stand in the shoes of a debtor to set aside transfers to third parties, but the fiction permits the trustee also to assume the guise of a creditor with a judgment against the debtor.  Under that guise, the trustee may invoke whatever remedies provided by state law to judgment lien creditors to satisfy judgments against the debtor.

*Zilkha*, 920 F.2d at 1523.  And, the "status and rights of the hypothetical lien creditor [under Section 544(a)(1)] . . . are determined by state law."  *Hamilton v. Washington Mut. Bank FA (In the Matter of Colon)*, 563 F.3d 1171, 1174 (10th Cir. 2009).

Turning back to the language of Section 544(a)(1), the central focus of the statute is allowing trustees to pursue avoidance actions.  In *Sender,* the Tenth Circuit stated: "Section 544(a) gives the trustee the power, as of the commencement of the bankruptcy case, to avoid transfers and obligations of the debtor to the same extent as certain hypothetical ideal creditors."  *Sender*, 84 P.3d at 1304. (Such holding, which

post-dates *Zilkha,* 920 F.2d at 1523, by many years, appears narrower than the *Zilkha* formulation.) Section 544(a)(1) "is most typically understood to give a trustee 'avoidance powers.' Indeed, the vast majority of cases construing a trustee's hypothetical powers involve the avoidance of liens, security interests and other transfers of power." *Rupp v. Duffin (In re Duffin)*, 457 B.R. 820, 827(10th Cir. BAP 2011). *See also*, RICHARD LEVIN & HENRY J. SOMMERS, 5 COLLIER ON BANKRUPTCY ¶ 544.01 (16th ed. Supp. 2023) ("It is generally thought that section 544 is limited to avoidance actions . . . but [it] does not transform the trustee into a 'super creditor' with the ability to raise causes of action separate from those possessed by the estate."); *Scenic Tours Pty Ltd. v. Haimark, Ltd.*, 2017 WL 1684138, at *4 (D. Colo. May 3, 2017) (same and "Section 544 does not enable the trustee 'to collect money not owed to the estate.'"). Even so, "the powers given to a trustee under § 544(a) are not limited to avoidance of transfers but specifically include broader 'powers and rights.'" *Duffin,* 457 B.R. at 828; *see also Hill v. Gibson Dunn & Crutcher, LLP (In re MS55, Inc.),* 2007 WL 2669150, at *11 (D. Colo. Sept. 6, 2007) ("[T]he language of section 544(a) supports a finding that trustees are endowed with more than solely avoidance powers."); *see also Zilkha*, 920 F.2d at 1523. For example, some of the additional powers include invoking the doctrine of marshalling and tolling the statute of limitations. *Duffin*, 457 B.R. at 828.

However, the intersection of Section 544(a)(1) and alter ego claims (governed by State law) is a confusing maze. The most directly on-point Colorado precedent on the topic again is *M & L*, 136 B.R. 271. Creditors who had loaned the debtor approximately $21,000,000 "decided to pursue their specific claims [including alter ego claims] against various named individuals and entities, excluding [the debtor], allegedly responsible for their investments." *Id.* at 273. (Such course of action mirrors Male Excel's decision to start the Federal Court Action.) The bankruptcy trustee sought to preclude the creditors' prosecution of such claims based on several arguments including the trustee's assertion that "Section 544 allows her to pursue these claims on behalf of all creditors of *M & L*." *Id.* at 274. (Such argument mirrors the Debtor's Response.) Ultimately, the *M & L* court relied on *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 (1972), which it characterized as holding that "a trustee could not pursue the debtor's debentureholders' claims against a third party" because the trustee was not empowered by statute "to collect money not owed to the estate." *Id.* at 275. Noting that the creditors' claims were "based upon particular and distinct injuries to each of them," the *M & L* court determined that "the Trustee does not have standing to assert the Plaintiff's claims on behalf of all creditors." *Id.* at 276. The *M & L* court also reasoned that:

> . . . the Trustee overstates the powers of a trustee under Section 544 for the recovery of claims such as those based upon alter ego actions. Section 544 does not give a trustee all rights and powers of creditors. It gives only rights and powers to avoid transfers of the debtor's property or obligations incurred by the debtor which could be avoided by a creditor or bona fide purchaser under the applicable subsections of Section 544. *Those subsections do not encompass the right to recover on an alter ego action.*

*Id.* at 277 (emphasis added).  The United States District Court for the District of Colorado affirmed "for the reasons stated by the bankruptcy court in its well-reasoned opinion."  *M & L*, 160 B.R. at 851.  The appellate court noted:  ". . . I concur with its [the bankruptcy court] analysis.  I agree, as have a majority of courts, that the Supreme Court's decision in *Caplin v. Marine Midland Grace Trust Co.*, 406 U.S. 416 . . . is still good law . . . ."  *Id.*  And, District Judge Kane concluded that "the Trustee has failed to demonstrate that the claims asserted by the Plaintiffs-Appellees in state court otherwise belong to the [bankruptcy] estate."  *Id.*  So, the creditors were allowed to continue their alter ego action outside of bankruptcy court.  It is implicit in the *M & L* decision that the creditors were not violating the Section 362(a)(3) automatic stay by continuing such alter ego litigation against third parties.  And, the foregoing reasoning and approach was reaffirmed in *ADEMA Tech.*, 2014 WL 1207431, at *2 ("Pursuant to *M & L*, the plaintiff's alter ego action to pierce ImaginIt and SFW's corporate veils and to assert tort claims against the defendants belongs to the plaintiff, not to the bankruptcy trustee.").  *See also ADEMA Tech.*, 2014 WL 1099770, at *2 ("Under Colorado law, 'an alter ego action to pierce the corporate veil belongs to the creditors of the corporation, not the corporation itself.'").

There is no binding Tenth Circuit precedent governing the foregoing Section 544(a) alter ego topic directly.  For example, the Tenth Circuit case most favored by the Debtor, *Zilkha*, 920 F.2d 1520, does not involve an alter ego claim at all.  Instead, it offers only a very generalized statement of the Section 544(a)(1) rubric which was perhaps narrowed later in *Sender,* 84 F.3d at 1304.  Notably, *Zilkha* also pre-dated *M & L*.  So, the *M & L* trial court and appellate court presumably were aware of *Zilkha* but did not construe the decision as directly applicable precedent.[64]  Instead, the *M & L* trial court held, years after *Zilkha*, that: "Those subsections [544(a) and (b)] do not encompass the right to recover on an alter ego action."  *M & L*, 136 B.R. at 277.  Thus, the Court rejects the Debtor's contention that *M & L* "is directly at odds with that precedential opinion [*Zilkha*]," because, among other things *Zilkha* did not involve an alter ego action.  The Debtor also touted *Delgado Oil*, 785 F.2d 857.  But again, *Delgado* involved the application of the limited common law fiduciary duty running between directors of an insolvent corporation to the creditor body as a whole; and that case did not concern alter ego claims.  *Delgado Oil,* 785 F.2d at 861 n.12 ("Plaintiff never argued alter ego or piercing the corporate veil . . . .").  Similarly, the Debtor asked the Court to consider *MS55*, 2007 WL 2669150, *aff'd on rehearing by* 2008 WL 2358699.  But, again the *MS55* decisions simply do not involve alter ego actions.  The Debtor has been unable to identify any reported decision from the Tenth Circuit, the United States District Court for the District of Colorado or the United States Bankruptcy Court for the District of Colorado which stands for the proposition that a debtor-in-possession has the exclusive right to pursue traditional alter ego claims against its own parents such that any similar actions brought outside of bankruptcy court by creditors violate the Section 362(a)(3) automatic stay.

Given the lack of such reported precedent, the Debtor resorted to citation of an unreported decision of another division of the Court:  *Lewis v. Takacs (In re Stone Pine*

---

[64]     The Court recognizes that neither the trial court nor the appellate court in *M & L* cited *Zilkha* as applicable precedent.

*Invs. Banking, LLC)*, Adv. Pro. No. 12-1680 KHT (Docket No. 253) (Bankr. D. Colo. Apr. 14, 2020).  In a two-sentence passage, the bankruptcy court wrote: "Trustee has asserted claims based on alter ego.  As a threshold matter, the Court finds Trustee has standing to assert alter ego claims as a representative of creditors under 11 U.S.C. § 544."  *Stone Pine,* Adv. Pro. No. 12-1680 KHT, slip op. at 42 (Bankr. D. Colo. Apr. 14, 2020).[65]  Other than the foregoing two sentences, the bankruptcy court offered no further textual analysis.  The Court does not know whether there was an objection to the trustee's standing or if creditors had initiated an independent alter ego action.  And, the case did not involve any issues pertaining to the Section 362(a)(3) automatic stay.  In any event, the bankruptcy court ignored *M & L* and instead cited three cases: *Weinstein*, 302 P.3d at 266; *Koch Refining*, 831 F.2d at 1348; and *MS55*, 2007 WL 2669150, at *11.  *Id.*  *Weinstein* is a Colorado Supreme Court decision which does not address the ability of a trustee or debtor-in-possession to bring an alter ego claim under Section 544(a).  As discussed previously, *MS55* does not deal with alter ego claims at all.  But, the citation to *Koch Refining* bears some further consideration.  However, ultimately, the Court respectfully disagrees (at least in the circumstances of this Adversary Proceeding) with the summary statement in *Stone Pine* which is contrary to *M & L.*

The Court recognizes that there is a deep split on whether Section 544(a)(1) authorizes bankruptcy trustees to exclusively pursue State law alter ego claims which may then implicate the Section 362(a)(3) automatic stay.  The *M & L* court recognized the divergent lines of cases on the topic, including *Koch Refining*, 831 F.2d 1339.  *M & L*, 136 B.R. at 275 n.6 (collecting cases).  In the subsequent thirty years, the split has only deepened.  *Koch Refining*, 831 F.2d 1339, is a leading case from the Seventh Circuit standing for the proposition that "under Illinois and Indiana law [], a bankruptcy trustee can bring an alter ego claim of action.  State law permits the alter ego claim to be asserted by the trustee in pursuing all funds available as Section 541 property of the estate."  *Id.* at 1346.  But, the case turns on Illinois and Indiana law, whether the claim is property of the estate under Section 541, and does not analyze Section 544(a).  Other appellate decisions of that ilk include:  *St. Paul Fire*, 884 F.2d at 696 (collecting cases and recognizing courts have "reached differing conclusions"; holding under Ohio law that traditional alter ego action is property of the bankruptcy estate); and *S.I. Acquisition, Inc. v. Eastway Delivery Service, Inc.*, 817 F.2d 1142 (5th Cir. 1987) (applying Texas law and determining that alter ego action was property of the bankruptcy estate).

Cases on the other side are legion too.  The Eighth Circuit's decision in *Mixon v. Anderson (In re Ozark Rest. Equip. Co., Inc.)*, 816 F.2d 1222 (8th Cir. 1987) is one of the key decisions standing for the proposition that debtors-in-possession may not bring general alter ego claims against their parents.  Applying Arkansas law, the *Ozark*

---

[65]      Although the Bankruptcy Court concluded that the trustee had standing to pursue an alter ego claim, it denied the trustee's claims.  The Bankruptcy Court's denial of those claims was affirmed on appeal, again without any analysis.  *Stone Pine Inv.*, 2023 WL 8758947, at *17 (10th Cir. Dec. 19, 2023) ("We cannot say we share the bankruptcy court's view of all the facts. . . But we are constrained by the record before us and the standard of review.  We find ourselves in the same position as the district court [that it may have "concluded to the contrary"] '[we] cannot conclude on appeal that the Bankruptcy Court's factual determine of this issue was clearly erroneous'. . . We thus affirm the bankruptcy court's denial of relief to the Trustee on the alter-ego/veil-piercing theory.").

*Restaurant* decision determined that "the [alter ego] claim does not become property of the estate under Section 541(a)(1), nor is it enforceable by the trustee under Section 704(1)." *Id*. at 1225.  Relying, in part, on the Supreme Court's decision in *Caplin*, 406 U.S. 416, the Eighth Circuit also rejected the Section 544(a) argument too: "Although Section 544 clarified and expanded the trustee's role with respect to creditors, in no way was it changed to authorize the trustee to bring [alter ego] suits on behalf of the estate's creditors against third parties." *Id*. at 1227.  Other circuits are in accord.  For example, in *Williams v. California 1st Bank*, 859 F.2d 664 (9th Cir. 1988), the Ninth Circuit held:

> We agree with the Eighth Circuit that Congress' express decision not to overrule *Caplin* is "extremely noteworthy." *Ozark Equip. Co.,* 816 F.2d at 1228.  We also share that court's certitude that "Congress' message is clear — *no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee[,] has power under . . . the Code to assert general causes of action, such as [an] alter ego claim, on behalf of the bankrupt estate's creditors." *Id.*

*Williams,* 859 F.2d at 667.

Forced to take sides in this dispute, the Court endorses the long-standing *M & L* approach in the circumstances of this Adversary Proceeding and determines that under Section 544(a) and Colorado alter ego law, the Debtor does not have the exclusive right to bring an alter ego action against its parents and related entities and individuals such that the Section 362(a)(3) automatic stay bars the Federal Court Action commenced by Male Excel.[66]  This is especially so because the Alter Ego Claims asserted by Male Excel are, at least in part, based upon alleged unique circumstances and particularized harm to Male Excel.  For example, in the Federal Court Complaint asserted: "The intercompany relationships and transactions Fell and Trexler are responsible for appear to be fraudulent in nature or, at very least, entered into for the specific purpose of reducing the appearance of Signia's profitability and draining its assets to evade future collection by Male Excel."; and "Defendants' actions manipulated Signia's financial state and effectively placed corporate funds out of Male Excel's reach, thereby defeating its rightful claim."[67] *See Caplin*, 406 U.S. 416.

## VI.   <u>Conclusion and Orders</u>.

For the reasons stated above, and having considered the Amended Complaint and Federal Court Complaint, the Court finds that the Debtor's Amended Complaint fails to state a claim upon which relief may be granted even assuming all the facts set forth in the Amended Complaint are accepted as true.  The Debtor cannot prevail and has not established a plausible violation of the Section 362(a) automatic stay by Male Excel. Accordingly, it is

---

[66]   The Court is deciding only the issues presented.

[67]   Federal Court Complaint ¶¶ 137 & 139.

ORDERED that the Motion to Dismiss is GRANTED and the Amended Complaint is DISMISSED.

DATED this 14th day of May, 2025.

BY THE COURT:

Thomas B. McNamara
United States Bankruptcy Judge